IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EDGEAQ, LLC, | ) |
| Plaintiff, | ) No. 3:14-cv-02264 |
| v. | ) Judge Todd J. Campbell |
| WTS PARADIGM, LLC, | ) Magistrate Judge E. Clifton Knowles |
| Defendant. | ) |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS IN PART**

Plaintiff EdgeAQ, LLC ("EdgeAQ") has failed to establish a *prima facie* case for personal jurisdiction over Defendant WTS Paradigm ("WTS"). Even if taken as true, EdgeAQ's allegations concerning WTS's alleged contacts with Tennessee fall short of fulfilling due process. EdgeAQ asserts that this Court can exercise personal jurisdiction over WTS because WTS does business with other, non-related companies that happen to do business in Tennessee, like The Home Depot. Yet the Federal Circuit has flatly rejected such an attenuated theory of personal jurisdiction — and for good reason. If EdgeAQ's theory was sufficient to establish personal jurisdiction, every manufacturer or producer that sells its product to national retailers, regardless of its size or scope, would be subject to the personal jurisdiction of every district court in the country. EdgeAQ's allegations of trade secret misappropriation do nothing to salvage its deficient personal jurisdiction theory. Even if taken as true, the majority of the alleged activities related to EdgeAQ's trade secret misappropriation claim are set in Middleton, WI. EdgeAQ has

1

QB\148648.00004\34150426.3

Case 3:14-cv-02264   Document 75   Filed 03/27/15   Page 1 of 16 PageID #: 1939

failed to show what aspects, if any, of its trade secret misappropriation claim took place in Tennessee.

Further, EdgeAQ has failed to rebut WTS's position that it is more burdensome for WTS to litigate this case in the Middle District of Tennessee than it would be for EdgeAQ to litigate this case in the Western District of Wisconsin. The bulk of the physical evidence and witnesses relevant to all of the claims at issue in this case (essentially patent infringement and trade secret misappropriation) lie in the Western District of Wisconsin. Further, the "locus of the operative facts" for the alleged patent infringement and the alleged trade secret misappropriation are set in the Western District of Wisconsin. Finally, EdgeAQ's arguments concerning WTS's alleged infringement and EdgeAQ's supposed harm are contradicted by its personal jurisdiction theory. If EdgeAQ is to be believed, WTS's alleged infringement occurs everywhere there is a Home Depot. Thus, EdgeAQ's supposed harm resulting form WTS's alleged infringement is not specific to the Middle District of Tennessee.

Finally, EdgeAQ has failed to rebut WTS's argument that EdgeAQ's tortious interference and procurement of breach of contract claims are preempted by EdgeAQ's trade secret misappropriation claim. WTS has shown how all three claims relate exclusively to the same set of factual allegations, namely the events surrounding Mr. Cork and his NDA. EdgeAQ attempts in its opposition to insert additional factual allegations into its Amended Complaint where there are none. As pled, EdgeAQ's tortious interference and procurement of breach of contract claims are preempted. The Court should shut down any attempts on EdgeAQ's part to embark on a fishing expedition related to such duplicative claims.

For these and the foregoing reasons and for all of the reasons WTS set forth in its opening brief (Dkt. 58),[1] WTS respectfully requests that the Court dismiss the instant case for lack of personal jurisdiction or, in the alternative, transfer the case to the Western District of Wisconsin or, in the alternative, dismiss the tortious interference and procurement of breach of contract counterclaims as preempted.

## I. EDGEAQ HAS ABANDONED ITS CLAIM THAT THE COURT HAS GENERAL PERSONAL JURISDICTION OVER WTS.

As a preliminary matter, EdgeAQ has abandoned its claim that the Court has general personal jurisdiction over WTS. A party abandons a claim if it fails to present any argument respecting the issue in its brief. *See Sommer v. Davis,* 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief); *Garcia-Marcos v. Lafler*, No. 05-10332, 2009 WL 261525, at *4 (E.D. Mich. Feb. 4, 2009) ("The petitioner admits in his petition that the claim is unexhausted since it was not raised in any of his state courts papers, and since there is no discussion of this second claim, the Court will deem it abandoned."). EdgeAQ elected not to present any argument on general jurisdiction in its opposition and, as such, has abandoned any claim that the Court has general personal jurisdiction over WTS.

When EdgeAQ filed suit against WTS, it alleged that "[u]pon information and belief, Defendant is subject to this Court's specific **and** general personal jurisdiction pursuant to due process and/or the Tennessee Long Arm Statute, due at least to Defendant's substantial business in this State and judicial district." (Dkt. 1, at 3 (emphasis added)). EdgeAQ reiterated these

---

[1] WTS originally moved to dismiss this case for lack of personal jurisdiction or, alternatively, to transfer on January 7, 2015. (Dkts. 24 & 25). After EdgeAQ filed its Amended Complaint (Dkt. 50), WTS submitted a new motion to dismiss or, alternatively, to transfer or, alternatively, to dismiss in part. (Dkts. 57 & 58). WTS submits this instant Reply Brief in support of that motion.

3

same allegations in its Amended Complaint. (Dkt. 50, at 3). WTS subsequently moved to dismiss the suit for lack of personal jurisdiction, both general and specific. (Dkts. 24, 25, 57, 58). In doing so, WTS carefully articulated why the Court does not have general personal jurisdiction over WTS, arguing that WTS has no "continuous and systemic" contacts with Tennessee. (Dkt. 58, at 8-10). EdgeAQ failed to address any of WTS's arguments concerning general jurisdiction. Rather, EdgeAQ dedicated its entire personal jurisdiction argument to *specific* personal jurisdiction. (*See* Dkt. 70, at 9-14).

As it stands, EdgeAQ has alleged general jurisdiction but has offered no argument in opposition to WTS's reasons to dismiss. Accordingly, the Court should resolve the issue of general jurisdiction against EdgeAQ.

## II. WTS IS NOT SUBJECT TO THE SPECIFIC PERSONAL JURISDICTION OF THIS COURT SIMPLY BECAUSE IT DOES BUSINESS WITH COMPANIES THAT HAPPEN TO DO BUSINESS IN TENNESSEE.

EdgeAQ's theory of specific personal jurisdiction is misguided. EdgeAQ asserts that the Court has specific personal jurisdiction over WTS because WTS sells its software to national retailers like The Home Depot, which then use WTS's software at locations in Tennessee. (*See* Dkt. 70, at 10-11). Even if taken at face value, these allegations do not provide a basis for the Court to have personal jurisdiction over WTS. At most, these allegations establish that national retailers like The Home Depot may have sufficient minimum contacts with Tennessee to be subject to the Court's personal jurisdiction. But WTS is not subject to the personal jurisdiction of the Court simply because WTS does business with companies that happen to do business in Tennessee. The Federal Circuit has flatly declined to adopt such a theory of personal jurisdiction.

4

For example, in *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, the Federal Circuit affirmed the district court's decision to dismiss a declaratory judgment action for lack of personal jurisdiction because the patent owner itself did not do business within the forum state, but rather had business partners that did business in the forum state. 148 F.3d 1355, 1359 (Fed. Cir. 1998). The Court so-ruled despite the fact that the patent owner had thirty-four licensees in the forum state that sold products within the forum state. *Id*. The Court reasoned that "doing business with a company that does business in [the forum state] is not the same as doing business in [the forum state]:"

> [The patent owner]'s licensees have extensive contacts with Minnesota, but this additional factor is also insufficient to submit [the patent owner] to personal jurisdiction in the state. **In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota.** Indeed, as stated above, the Supreme Court has made clear that contacts resulting from "the unilateral activity of another party or third person" are not attributable to a defendant. *See Burger King,* 471 U.S. at 475 & n. 17, 105 S.Ct. 2174 (citing *World–Wide Volkswagen,* 444 U.S. 286, 100 S.Ct. 559 (no jurisdiction over an out-of-state automobile distributor whose only tie to the forum resulted from a customer's decision to drive there); *Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (no jurisdiction over a divorced husband being sued for child-support payments whose only affiliation with the forum was created by his former spouse's decision to settle there); *and Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (no jurisdiction over a trustee whose only connection with the forum resulted from the settlor's decision to exercise her power of appointment there)). **[The plaintiff]'s flawed theory would subject a defendant to nationwide personal jurisdiction if it decides to do business with a company that does business nationwide.**

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (emphasis added). That same rationale applies here: simply because WTS sells its software to companies that have a presence in and conduct business in Tennessee does not subject WTS to the specific jurisdiction of this Court when WTS itself has no physical presence in Tennessee, conducts no sales or other business in Tennessee, and proactively does not specifically target the Tennessee market.

Numerous district courts have applied the Federal Circuit's reasoning in *Red Wing* to the patent infringement context and have ruled that a district court cannot assert personal jurisdiction over a defendant simply because the defendant does business with a companies that have a presence in or conduct business in the forum state. *See, e.g.*, *Canatelo, LLC v. AXIS Commc'ns AB*, 953 F. Supp. 2d 329, 338 (D.P.R. 2013) ("Plaintiff cites no legal support to demonstrate that a court may assert jurisdiction over a corporation that sells its products to a distributor, who then sells the products within a forum."); *Tech. Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 914 (D. Md. 2008) (dismissing patent infringement suit for lack of personal jurisdiction because "personal jurisdiction cannot be based on the fact that a defendant contracts or does business with a company that has sufficient contacts with the forum state"), *aff'd sub nom.*, *Tech. Patents LLC v. T-Mobile (UK) Ltd.*, 700 F.3d 482 (Fed. Cir. 2012); *see also Grant St. Grp., Inc. v. D & T Ventures, LLC*, No. CIV.A. 10-1095, 2012 WL 13689, at *4 (W.D. Pa. Jan. 4, 2012).

EdgeAQ cites only non-precedential and/or inapposite cases in support of its specific personal jurisdiction theory. The cases upon which EdgeAQ relies are distinguishable from this case as they involve defendants that sold the accused product to a national or regional retailer for *resale* in the forum state. (*See* Dkt. 70, at 10 (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1560 & 1566-67 (Fed. Cir. 1994) (personal jurisdiction because the defendant shipped the accused product through a regional retailer for resale in the forum state); *Schwanger v. Munchkin, Inc.*, 217 F.3d 854, 1999 WL 820449, at *1 & *6 (Fed. Cir. 1999) (unpublished)[2] (personal jurisdiction because the defendant shipped the accused product through Wal-Mart into Ohio for resale); *Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 946 F. Supp. 2d 714, 722 (E.D. Mich. 2013) (personal jurisdiction because the defendant sold the

---

[2] EdgeAQ failed to disclose that *Schwanger* is an unpublished, non-precedential case. (*See* Dkt. 70, at 10).

accused product to national retailers for resale in Michigan); *Original Creations, Inc. v. Ready Am., Inc.*, 836 F. Supp. 2d 711, 717 (N.D. Ill. 2011) (personal jurisdiction because the defendant sold the accused product to regional distributors for resale in Illinois); *Hanamint Corp. v. Alliant Mktg. Grp., LLC*, 481 F. Supp. 2d 444, 448 (M.D.N.C. 2007) (personal jurisdiction because the defendant contracted with Wal-Mart to sell the accused product in North Carolina)).

Unlike the defendants in the cases EdgeAQ cites, WTS does not sell its product to its customers for resale. (Dkt. 61, Declaration of Joel Fields, ¶¶ 29-34). Rather, WTS sells its software to its customers, which then distribute the software under sublicenses as the customers see fit. (*Id.*, ¶¶ 29-31). Thus, even though WTS's customers may use WTS's software in locations in Tennessee, WTS does not derive revenue from sales of its software made in Tennessee. Accordingly, the rationale for exercising specific personal jurisdiction over the defendants in the cases upon which EdgeAQ relies does not exist here.

If EdgeAQ's specific personal jurisdiction theory was enough for a court to exercise personal jurisdiction over a defendant, no manufacturer or producer that sells its product to national retailers, regardless of its size or scope, could predict with any level certainty where it might be sued. Due process requires more. Further jurisdictional discovery will only prove futile in this case because EdgeAQ's entire theory is flawed. Even if EdgeAQ could discover evidence supporting its allegations, such evidence cannot provide a basis for personal jurisdiction over WTS.

### III. EDGEAQ'S TRADE SECRET ALLEGATIONS CANNOT SUBJECT WTS TO THE PERSONAL JURISDICTION OF THIS COURT BECAUSE THE "HEART" OF EDGEAQ'S ALLEGATIONS DO NOT INCLUDE ANY SIGNIFICANT ACTIVITY IN TENNESSEE.

EdgeAQ's trade secret allegations cannot subject WTS to the personal jurisdiction of this Court because the "heart" of EdgeAQ's allegations do not include any significant activity in

Tennessee. The bulk of EdgeAQ's trade secret misappropriation allegations take place in Wisconsin, not Tennessee. For example, EdgeAQ alleges that Mr. Cork traveled to Wisconsin in April 2010 to attend meetings with representatives at WTS to define WTS's sales strategy, viewed a demonstration of WTS's software in the spring or summer of 2010, and provided WTS with ideas on how to modify its software to be more competitive. (Dkt. 50, ¶¶ 71-73). EdgeAQ also alleges that Mr. Cork provided WTS (located only in Wisconsin) with EdgeAQ's supposed trade secrets. (*Id.*, ¶¶ 76-83). None of EdgeAQ's trade secret misappropriation allegations involve activities in Tennessee. (*See id.*, 39-89). EdgeAQ did allege that a WTS representative e-mailed Mr. Cork in December 2009, but there is no indication that Mr. Cork was in Tennessee at that point in time, and one e-mail amongst all of EdgeAQ's numerous allegations cannot possibly form the "heart" of its trade secret misappropriation claim. Even if taken at face value, EdgeAQ's allegations cannot subject WTS to the personal jurisdiction of this court because they fail to show sufficient minimum contacts with Tennessee.

The case law EdgeAQ cites in support of its theory only undermines EdgeAQ's argument. EdgeAQ cites *Intera Corp. v. Henderson* in support of its argument that "WTS purposely availed itself of Tennessee by soliciting a Tennessee resident to provide confidential trade secret information about a Tennessee company." (Dkt. 70, at 12). Yet in *Intera Corp.*, the Sixth Circuit affirmed the district court's decision to dismiss a trade secret misappropriation case for lack of personal jurisdiction, despite the fact that the defendants allegedly had "substantial and regular" contact with the plaintiffs, both Tennessee corporations, in order to implement a licensing agreement. 428 F.3d 605, 618 (6th Cir. 2005). The Sixth Circuit reasoned that even if taken as true, the plaintiffs had failed to assert any facts tending to show that the defendants had such contact with the plaintiffs ***in Tennessee***:

> Even accepting as true [the plaintiffs]' contention that the implementation of the license agreement between [one plaintiff] and [the defendant company] required [the defendant] officers and representatives to have "substantial and regular" contact with [one plaintiff], [the plaintiffs] do not assert facts tending to show that [the defendant representatives] had such contact with [one plaintiff] in Tennessee.

*Id.* In addition, the Sixth Circuit ruled that it would not be reasonable for a Tennessee court to exercise personal jurisdiction over the defendant representatives because the defendant representatives "did not commit their alleged deceptive acts within the geographical confines of Tennessee appears to diminish the state's purported strong interest." *Id.* The same rationale applies here: EdgeAQ has failed to alleged facts, even if taken as true, that tend to show that WTS or a WTS representative had contact with Mr. Cork in Tennessee or that any of WTS's representatives committed an allegedly tortious act in Tennessee. Thus, EdgeAQ has failed to offer facts upon which this Court could exercise personal jurisdiction over WTS.

EdgeAQ has hinged personal jurisdiction for this entire case, patent infringement claims included, on one e-mail allegedly sent to a third-party supposedly in Tennessee at the time. Even taken at face value, such an insignificant event, when viewed in the context of this entire case, cannot amount to sufficient minimum contacts with Tennessee. Again, jurisdictional discovery will only prove futile in this case because EdgeAQ's entire theory is flawed. Even if EdgeAQ could discover evidence supporting its meager allegations, such evidence cannot provide a basis for personal jurisdiction over WTS.

## IV. **LITIGATING THIS CASE IN THE WESTERN DISTRICT OF WISCONSIN WOULD PLACE LESS OF A BURDEN ON EDGEAQ AS LITIGATING THIS CASE IN THE MIDDLE DISTRICT OF TENNESSEE CURRENTLY PLACES ON WTS.**

Litigating this case in the Western District of Wisconsin would place less of a burden on EdgeAQ as litigating this case in the Middle District of Tennessee currently places on WTS.

First, EdgeAQ has failed to rebut WTS's argument that the bulk of the relevant evidence, including documentation and witnesses, resides in the Western District of Wisconsin. EdgeAQ conclusorily argues that the location of relevant evidence weighs neutrally in the transfer analysis because modern technology allows for easy transmission of documents from Wisconsin to Tennessee. (Dkt. 70, at 16). Yet the Federal Circuit has rejected such arguments in the recent past. The Federal Circuit has held that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quotations and citations omitted). WTS provided evidence that all of WTS's documentation related to the accused product is in Middleton, WI. (Dkt. 61, Declaration of Joel Fields, ¶ 13). EdgeAQ does not dispute this evidence, instead countering that EdgeAQ's documents are in the Middle District of Tennessee. Yet it is unclear how EdgeAQ's documents are relevant to WTS's alleged infringement. Further, EdgeAQ asserts that EdgeAQ's employee witnesses are all located in the Middle Tennessee area. But EdgeAQ will likely need to produce far fewer employee witnesses than WTS, as it is WTS's employees that have information about the accused product.

Second, EdgeAQ's trade secret misappropriation, tortious interference, and procurement of breach of contract claims do not change the transfer analysis. As discussed *supra*, even if taken at face value, EdgeAQ's trade secret misappropriation allegations involve activities that are primarily set in Wisconsin. (*See* Dkt. 50, ¶¶ 39-89). And, as discussed *infra*, EdgeAQ's tortious interference and procurement of breach of contract allegations stem from the same set of alleged facts. Thus, EdgeAQ's own theory of the case tends to show that any purported misappropriated trade secrets would reside at WTS in the Western District of Wisconsin, along

10

QB\148648.00004\34150426.3

Case 3:14-cv-02264   Document 75   Filed 03/27/15   Page 10 of 16 PageID #: 1948

with the majority of the witnesses with relevant information. EdgeAQ points to Mr. Cork (Dkt. 70, at 18), a resident of Tennessee, but Mr. Cork is being well compensated for his time in this case and thus any supposed inconvenience to him should be disregarded.

Third, EdgeAQ's representation of what the "locus of operative facts" is in this case is misleading. This is essentially a patent infringement and trade secret misappropriation case. (Dkt. 50). WTS has not yet answered EdgeAQ's Amended Complaint and thus has not presented any defenses or counterclaims. Thus, the "locus of operative facts" revolve around WTS's alleged infringement and WTS's alleged misappropriation of trade secrets. Further, if EdgeAQ is to be believed, WTS's alleged infringement occurs everywhere there is a Home Depot. Thus, EdgeAQ's supposed harm is not specific to the Middle District of Tennessee. For this same reason, EdgeAQ's arguments regarding the Tennessee's public policy interest arguments are faulty.

WTS has shown why litigating this case in the Middle District of Tennessee places a heavier burden on WTS than litigating this case in the Western District of Wisconsin would place on EdgeAQ. EdgeAQ has failed to refute WTS's arguments. Thus, the Court should transfer the case to the Western District of Wisconsin.

## V. EDGEAQ'S TRADE SECRET, TORTIOUS INTERFERENCE, AND PROCUREMENT OF BREACH OF CONTRACT CLAIMS ALL RELATE EXCLUSIVELY TO THE SAME SET OF ALLEGED FACTS.

EdgeAQ's trade secret, tortious interference, and procurement of breach of contract claims all relate exclusively to the same set of alleged facts. As a preliminary matter, EdgeAQ asserts, as if it were dispositive for this issue, that "the underlying elements EdgeAQ must provide for Counts IV and V are different than the elements for trade secret misappropriation." (Dkt. 70, at 21). This is irrelevant. This Court and others have held that claims are preempted

despite the fact that they have different elements than those of trade secret misappropriation. *See, e.g.*, *Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 985 (M.D. Tenn. 2008) (Tennessee Uniform Trade Secret Act ("TUTSA") preempts civil conspiracy claim); *J.T. Shannon Lumber Co. v. Barrett*, No. 2:07-CV-2847-JPM-CGC, 2010 WL 3069818, at *12 (W.D. Tenn. Aug. 4, 2010) (dismissing tortious interference claim as preempted by TUTSA because it was based on allegations of the defendant inducing the plaintiff's former employee to breach his confidentiality provision by disclosing trade secreted information).

Despite EdgeAQ's protests, EdgeAQ's trade secret, tortious interference, and procurement of breach of contract claims all rely exclusively on the same allegations. As the basis for its trade secret misappropriation claim, EdgeAQ alleges that WTS induced former employee, Stephen Cork, into violating his NDA and divulging information made confidential by virtue of said NDA. (Dkt. 50, ¶¶ 39-89). EdgeAQ relies on these very same allegations as the bases for its tortious interference and procurement of breach of contract claims. (*Id.* at ¶¶ 90-91 & 94-95). The paragraphs EdgeAQ highlights in its opposition do nothing to rebut this. EdgeAQ argues that paragraph 91 of its Amended Complaint, relating to EdgeAQ's tortious interference claim, relies on factual allegations distinct from its trade secret allegations (*see* dkt. 70, at 20), but the paragraph does no such thing:

> **As shown by the facts set forth herein**, Defendant has intentionally interfered with EdgeAQ's contractual and business relationships. At the time of Defendant's intentional interference, EdgeAQ had **an existing business relationship** and prospective contractual relationship with one or more identifiable third parties, including but not limited to **a contract with Mr. Cork**. At that time, WTS had actual knowledge of **the specific relationship between the identifiable third party and EdgeAQ**.

(Dkt. 50, ¶ 91 (emphasis added)). Viewed in the context of the entire Amended Complaint and the "facts set forth [t]herein," the "existing business relationship" and the "specific relationship

12

QB\148648.00004\34150426.3

Case 3:14-cv-02264 Document 75 Filed 03/27/15 Page 12 of 16 PageID #: 1950

between the identifiable third party and EdgeAQ" can only refer to the NDA between Mr. Cork and EdgeAQ. EdgeAQ did not allege facts specific to any other business relationship. Had it done so, it no doubt would have pointed it out in its opposition. Further, EdgeAQ cannot save its conclusory tortious interference claim from preemption with its blithe reference to "one or more identifiable third parties." To allow the claim to survive based on such an allegation would allow EdgeAQ to embark on an unwarranted fishing expedition.

Similarly, EdgeAQ argues that paragraph 95 of its Amended Complaint, relating to EdgeAQ's procurement of breach of contract counterclaim, relies on factual allegations distinct from its trade secret allegations (*see* Dkt. 70, at 20), but the paragraph does no such thing. EdgeAQ omitted the first half of the paragraph which explicitly references Mr. Cork and his NDA; WTS produces it in full here:

> **As shown by the facts set forth herein, Defendant has, by inducement, persuasion, misrepresentation, or other means, induced or procured the breach or violation of the Cork Nondisclosure Agreement** in violation of T.C.A. § 47-50-109. At the time of the wrongdoing, **a legal contract** existed between EdgeAQ and **an identifiable third party**, and WTS had knowledge of the existence of **the contract**. WTS had an intention to induce **the third party** to breach its contract with EdgeAQ, and WTS acted with malice in inducing **the third party** to breach its contract with EdgeAQ. WTS's wrongdoing is a proximate cause of the breach of a contract, which resulted in damages to EdgeAQ. EdgeAQ is entitled to treble damages based on the Defendant's procurement of the breach of a contract.

(Dkt. 50, ¶ 95 (emphasis added)). Again, viewed in the context of the entire Amended Complaint and the "facts set forth [t]herein," the "legal contract" can only refer to Mr. Cork's NDA and the "identifiable third party" can only refer to Mr. Cork. Again, EdgeAQ did not allege facts specific to any other legal contract or third party. Had it done so, it no doubt would have pointed it out in its opposition.

QB\148648.00004\34150426.3

This case is analogous to *Hauck Mfg. Co. v. Astec Indus., Inc.* In *Hauck*, the plaintiff asserted claims of trade secret misappropriation, tortious interference, and procurement of breach of contract. *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 658 (E.D. Tenn. 2004) (emphasis added). The plaintiff alleged that the defendant interfered with the plaintiff's contracts with two of its former employees by inducing the former employees to breach their confidentiality agreements with the plaintiff. *Id.* The confidentiality agreements prohibited the former employees from disclosing secret, confidential, or proprietary information. *Id.* The court dismissed the tortious interference and procurement of breach of contract claims as preempted by the trade secret misappropriation claim because they all relied on the disclosure of information made secret by the confidentiality agreements. *Id.* Further, the court dismissed the plaintiff's arguments that it should be allowed to pursue the tortious interference claim in the event that some of the information it alleged as trade secreted was found not to be:

> Plaintiff seeks to avoid preemption on the basis it may prevail on its tortious interference claim even if some or all of the confidential information at issue does not amount to a trade secret. Plaintiff does allege Irwin stole a mass of information from Astec and almost certainly *all* of that information cannot qualify as trade secrets. **However, as stated previously, plaintiffs alleging theft or misuse of their ideas, data, or other commercially valuable information are confined to the single cause of action provided by the UTSA. Thus, Plaintiff's tortious interference claim, to the extent it relies upon Irwin and Sun's breach of their confidentiality agreements, is synonymous with "misappropriation" as defined in the UTSA**, *see* Tenn.Code Ann. § 47–25–1702(1) (defining "misappropriation" to include "breach or inducement of a breach of a duty to maintain secrecy"), and would be preempted under any interpretation of UTSA preemption.

*Id.* (emphasis added) (footnote omitted).

Accordingly, because EdgeAQ's tortious interference and procurement of breach of contract claims all relate exclusively to Mr. Cork and his NDA, they are preempted by EdgeAQ's trade secret misappropriation claim. (*See* Dkt. 50, ¶¶ 39-89, 90-91 & 94-95).

14

## VI. CONCLUSION

For the foregoing reasons and for all of the reasons WTS set forth in its opening brief (dkt. 58), WTS respectfully requests that the Court dismiss the instant case for lack of personal jurisdiction or, in the alternative, transfer the case to the Western District of Wisconsin or, in the alternative, dismiss the tortious interference and procurement of breach of contract counterclaims as preempted.

Dated this 27th day of March 2015.

*/s/ Anthony A. Tomaselli*
Anthony A. Tomaselli (*pro hac vice*)
aat@quarles.com
Kristin Graham Noel (*pro hac vice*)
kgn@quarles.com
Martha Jahn Snyder (*pro hac vice*)
martha.snyder@quarles.com

QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: 608.251.5000
Fax: 608.251.9166

Louis A. Klapp (*pro hac vice*)
Louis.Klapp@quarles.com
QUARLES & BRADY LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654
Tel: 312-715-2712
Fax: 312-632-194

William L. Campbell, Jr. (BPR 22712)
FROST BROWN TODD LLC
150 3rd Avenue South, Suite 1900
Nashville, TN 37201
(615) 251-5550
ccampbell@fbtlaw.com

*Counsel for Defendant WTS Paradigm, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2015, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: March 27, 2015                            */s/ Anthony A. Tomaselli*

QB\148648.00004\34150426.3