IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| EDGEAQ, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:14-cv-2264 |
| | ) | JUDGE CAMPBELL |
| WTS PARADIGM, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1404(a) or, in the Alternative, to Dismiss Counts IV and V for Failure to State a Claim. Docket No. 57. For the reasons stated herein, the Court will grant Defendant's Motion to Dismiss.

**I.    Factual Background and Procedural History**

Defendant is a Wisconsin limited liability company with its principal place of business in Middletown, Wisconsin. It designs and sells software systems for arranging, displaying, manufacturing, and selling building products, including a product called CenterPoint System, a software program alleged to infringe on Plaintiff's patent. In addition to federal patent claims, Plaintiff also brings state law claims for trade secret misappropriation, tortious interference with contractual and business relationships, and procurement of breach of contract. Docket No. 50 at 1—2 (Amended Complaint). The state-law claims are based on the following allegations: in 2005, Stephen Cork was Vice President of Building Products for Edgenet, Inc., a predecessor company to EdgeAQ; Mr. Cork's employment with Edgenet ended in June of 2007; in 2009, Defendant recruited Mr. Cork, a resident of Tennessee, to provide consultation services related to Defendant's

development of the infringing CenterPoint software system; Defendant sought out Mr. Cork because of his extensive knowledge of Edgenet's patented software platform; in 2010, Defendant entered into a contract with Mr. Cork for these consultation services and, thereafter, requested and acquired confidential information from Mr. Cork related to Edgenet's software platform and other confidential information related to Edgenet's business; Defendant used the information it gained from Mr. Cork to develop its own infringing software products, which are now located in Tennessee at dozens of retail outlets in the state.

Plaintiff alleges that Defendant sells its infringing software primarily to three types of customers, building products industry retailers for use at point-of-sale retail locations, such as Home Depot, building product industry manufactuers, such as Pella Corporation, which manufactures windows and doors, and building industry dealers, such as 84 Lumber in Murfreesboro, Tennessee, Crosslin Building Supply, Inc. in Eagleville, Tennessee, and Warren Brothers Sash & Door in Nashville, Tennessee. These software products are not sold to individual customers in these stores. Instead, customers in a retail store such as Home Depot access Defendant's software using public access computer terminals or other types of computer display kiosks located in the store. Plaintiff alleges that Defendant has a contract with nationwide retailer Home Depot to include Defendant's software in its local Home Depot stores. Home Depots stores in Tennessee use Defendant's allegedly infringing software to configure, quote, and order building products. Docket No. 70-4 at 2 (Declaration of Jeremy Mott). Plaintiff further alleges that Defendant's software product is used in each of the businesses listed above, including the thirty-nine Home Depot stores in Tennessee and three Pella Window and Door Showroom in Tennessee.

On November 17, 2014, Plaintiff filed this action. On January 28, 2015, Plaintiff filed an

Amended Complaint. Plaintiff's Amended Complaint makes the following allegations as to personal jurisdiction:

> Upon information and belief, Defendant is subject to this Court specific and general personal jurisdiction as a result of its "substantial business in this state and judicial district, including: (1) at least a portion of the infringements alleged herein; and/or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Tennessee and in this district. Defendant has sold and offered to sell infringing goods and/or services in this District and in the State of Tennessee. Defendant's website includes a map which plots users of its goods and services, including many in the State of Tennessee. Defendant is further subject to jurisdiction in this State and this judicial District through its actions in misappropriating EdgeAQ's trade secrets, interfering with EdgeAQ's contractual and business relations and inducing a resident of this District to breach his contract with EdgeAQ.

Docket No. 50 at 3.

In its briefs and submissions, Plaintiff has presented, *inter alia*, the following evidence and arguments in support of its assertion that this Court has sufficient contacts with Tennessee for this Court to exercise personal jurisdiction: Defendant was aware that its customers had numerous Tennessee retail stores when it sold the infringing software system and was aware that its products now are, in fact, located in Tennessee stores; Defendant's CenterPoint System comes with "Maintenance and Post-Live Services," which require "systematic and continuous contact with purchasers," such as the Home Depot retail outlets in Tennessee; in order to train individuals on the system or offer system updates, Defendant would have "to instruct those at the point of use at the retail store level" and thus "render services within the jurisdictions [where the software] is installed;"[1] and Defendant contracted with Plaintiff's former employee, a Tennessee resident, "to obtain a Tennessee company's trade secret information." Docket No. 70 at 2–3 (Pl.'s Resp. Brief).

---

[1] Plaintiff does not specify the medium over which this instruction would take place, whether it would involve an in person visit, or take place over computer, phone, or mail.

3

Plaintiff further alleges that on May 24, 2014, an employee of Defendant traveled to Nashville, Tennessee and had dinner with an individual who is now the Chief Executive Officer at EdgeAQ, though he was in sales for a different company at the time, in an attempt to hire him for a sales position with Defendant. During that meal, Defendant's employee allegedly told the current CEO of Plaintiff that Defendant had been able to incorporate window treatments quickly in connection with the implementation of their product configuration software at Home Depot because it had "copied Edgenet's stuff."

Defendant presents a declaration from Joel Fields, Chief Financial Officer for Defendant, with the following facts, which Plaintiff does not dispute: Defendant has no physical presence in Tennessee; Defendant does not own, rent, lease, or occupy any real or personal property in Tennessee; Defendant has no manufacturing plants, no distribution facilities, and no sales offices in Tennessee; Defendant maintains no corporate or other offices in Tennessee; Defendant is not, and has never been, registered to do business in Tennessee; Defendant has no current employees, distributors, or sales representatives residing or working in Tennessee; Defendant has never paid income taxes to the State of Tennessee; Defendant's website is "mostly static" and does not target the Tennessee market, nor does it target the Tennessee market through print, television, radio, or internet; Defendant's website does not contain an interactive order form and only lists two phone numbers on its "contact page," a toll-free number and a Wisconsin number; the only interactive feature of the website is a form to send an electronic message to Defendant's sales team; Defendant does not attend trade shows or exhibitions as a vendor in Tennessee; to its knowledge, Defendant is not listed in any telephone, business, or other informational directory in Tennessee. Docket No. 28 (Fields Declaration). Defendant presents evidence that it has only sold its software to one

4

customer in Tennessee, and that business relationship ended prior to the commencement of this lawsuit. Mr. Fields further represents that Defendant primarily sells its software to retail chain customers such as Home Depot and manufacturing customers such as Pella, and that those customers then distribute the software under a sub-license to their various stores or dealers as they deem appropriate. Defendant also presents evidence that Mr. Cork, Plaintiff's former employee, was hired as a consultant under an agreement defined by Wisconsin law, provided his services in Wisconsin to Defendant's Wisconsin-based employees, with the purpose of improving the sales of a software product that is built in and sold from Wisconsin.

## II.   Standard of Review

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

## III.   Legal Analysis
5

Defendant argues that this Court cannot exercise personal jurisdiction over it because Defendant does not have the requisite minimum contacts with the state of Tennessee to satisfy due process requirements. In patent cases, Federal Circuit law applies to the issue of personal jurisdiction "because the jurisdictional issue is intimately involved with the substance of the patent laws." *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012). Because the Court is making this determination based on the record without an evidentiary hearing, Plaintiff only needs to show a *prima facie* case for personal jurisdiction, and this Court "must accept uncontroverted allegations in plaintiff's complaint as true and resolve any factual conflicts in plaintiff's favor." *Id.* (citation omitted). The Federal Circuit conducts a two-step inquiring to determine whether personal jurisdiction exists for an out-of-state defendant: (1) does the forum state's long-arm statute permit service of process, and (2) whether assertion of personal jurisdiction violates due process. *Id.* Tennessee's long-arm statute is "coextensive" with federal due process limitations such that the inquiry collapses into the question of "whether jurisdiction comports with due process." *Id.* (citation omitted).

There are two types of personal jurisdiction– general and specific. Defendant's brief in support of its motion to dismiss argued in detail that this Court does not have general jurisdiction. Plaintiff failed to address this issue in its response brief, and only presented argument with respect to this issue in its surreply. Although the Court granted Plaintiff's motion to file a surreply, it is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in the opposition. *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir.2002) (quoting *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir.2001)); *see also Cooper v. Shelby County*, No. 07–2283, 2010 WL 3211677, at *3 (W.D.Tenn. Aug. 10, 2010) (holding

6

arguments raised for the first time in a reply brief "are generally not considered because such a practice deprives the non-moving party of its opportunity to address the new arguments"). That rule obviously applies with equal force to arguments raised for the first time in a surreply. Accordingly, Plaintiffs have abandoned the argument that this Court has general jurisdiction over Defendant. *Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding party abandoned a claim by failing to present any argument on the subject in its brief). Furthermore, Plaintiff's argument fails on the merits. "General jurisdiction arises when a defendant maintains contacts with the forum state that are sufficiently continuous and systematic, even when the cause of action has no relation to those contacts." *Grober*, 686 F.3d at 1346 (internal quotation marks and citation omitted). Plaintiff has not shown that Defendant's contacts with Tennessee are sufficiently continuous and systematic to permit the Court to exercise general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2856 (2011).

The Court turns to the question of whether it has specific jurisdiction over Defendant. "Specific jurisdiction ... must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Grober*, 686 F.3d at 1346. The Federal Circuit conducts the following analysis in analyzing specific jurisdiction:

> When analyzing specific personal jurisdiction over a nonresident defendant, a court considers whether: (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair. The plaintiff has the burden of proving parts one and two of the test, and then the burden shifts to the defendant to prove that personal jurisdiction is unreasonable. As this court previously explained "[t]he first two factors correspond with the 'minimum contacts' prong of the *International Shoe v. Washington*, 326 U.S. 310 (1945) analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed Corp.* [*v. Kuzmak*, 249 F.3d 1356, 1360 (2001)].

7

*Id.* (some internal quotation marks, brackets, and citations omitted).

As to the first prong. where "the defendant 'deliberately' has engaged in significant activities within a State ... he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1232–33 (Fed. Cir. 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S.462, 475–76 (1958)). The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (internal citation omitted). Based on the uncontroverted evidence presented in this matter, the Court finds that Defendant did not purposefully direct its activities at residents of Tennessee, and therefore does not satisfy the first prong of the specific jurisdiction test. The decision of a national corporation such as Home Depot to put Defendant's software in its Tennessee stores is unilateral activity. The declaration by Defendant's CFO Joel Fields, the relevant details of which are uncontroverted, demonstrates that Defendant has no physical presence in Tennessee and does not target Tennessee. Even accepting as true Plaintiff's contentions about Defendant's contacts with Tennessee, as the Court is obligated to do at this stage of the proceedings, those contacts do not constitute significant or purposeful activities such that this Court may exercise jurisdiction over Defendant.

As to the second prong, Plaintiff argues that this Court has jurisdiction under the stream of commerce theory. The Supreme Court's "stream of commerce" jurisprudence provides that a defendant can "purposefully avail itself of a forum by 'deliver[ing] its products into the stream of

8

commerce with the expectation that they will be purchased by consumers in the forum [s]tate." *Nuance*, 626 F.3d at 1233 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)) (brackets in original). As the Federal Circuit has noted, the Supreme Court's stream of commerce precedent was left unsettled after *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987), in which the Supreme Court failed to resolve a circuit split in the wake of *World-Wide Volkswagen* over the exact requirements of the theory. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994). As the Federal Circuit explained:

> Four Justices were of the view that an exercise of personal jurisdiction requires more than the mere act of placing a product in the stream of commerce. As Justice O'Connor expressed it, there must be in addition "an action of the defendant purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112 (emphasis in original). But four of the Justices considered the showing of 'additional conduct' unneeded.

*Id.* The Federal Circuit has thus far declined to take a position on this split, as it has been able to resolve the cases before it without addressing that issue. *See, e.g., AFTG-TG, LLC v. Nuvoton Tech. Corp.,* 689 F.3d 1358, 1364 (Fed. Cir. 2012) ("Thus, *Beverly Hills Fan* counsels that we refrain from taking a position on the proper articulation of the stream-of-commerce theory where the facts of a particular case mandate exercising or declining to exercise personal jurisdiction under any articulation of that theory."); *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) ("We have also applied the stream of commerce theory, although we have not resolved the split in authority reflected in the competing plurality opinions in *Asahi*."); *Beverly Hills Fan*, 21 F.3d at 1566 ("We need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing.").

While not resolving the split in authority about the requirements for a plaintiff proceeding on a stream of commerce theory, the Federal Circuit has articulated three "necessary ingredients for

9

an exercise of jurisdiction consonant with due process: "defendants, acting in consort, placed the accused [products] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Id.* The Federal Circuit has further counseled that courts are to assess personal jurisdiction premised on the stream of commerce theory on a "case-by-case basis by inquiring whether the particular facts of a case support the exercise of personal jurisdiction." *AFTG-TG*, 689 F.3d at 1362.

As a preliminary matter, the Court finds that stream of commerce theory does not apply to the facts of this case, which involve a company supplying computer software to national companies who act independently choose to place that purchased software in stores throughout the country. The choices of a national retailer such as Home Depot about where and how to utilize computer software products strike the Court as just the sort of "unilateral activity of another party or a third person" that the Supreme Court declared fell short of "purposeful availment." *Burger King*, 471 U.S. at 475. For that reason, the cases upon which Plaintiff relies are distinguishable from this case in that they address situations in which defendants sell an accused product to a national or regional retailer for *resale to ordinary, individual consumers* in the forum state. Docket No. 70 at 10 (citing *Beverly Hills Fan*, 21 F.3d at 1566–67 (finding personal jurisdiction because defendant shipped the accused product through a regional retailer for resale in the forum state); *Schwanger v. Munchkin, Inc.*, No. 99-1049, 1999 WL 820449 at *1, *6 (Fed. Cir. October 7, 1999) (finding personal jurisdiction because "Muchkin purposefully shipped the accused product into Ohio through Wal-Mart, an established distribution channel"); *Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 946 F. Supp. 2d 714 (E.D. Mich. 2013) (finding personal jurisdiction because defendant sold accused

product to Walgreen for resale in Michigan); *Original Creations, Inc. v. Ready Am., Inc.*, 836 F. Supp. 2d 711 (N.D. Ill. 2011) (finding personal jurisdiction because defendant sold the accused product to regional distributors for resale in Illinois); *Hanamint Corp. v. Alliant Mktg. Grp., LLC*, 481 F. Supp. 2d 444 (M.D. N.C. 2007) (finding personal jurisdiction because defendant contracted with Wal-Mart to sell accused products in North Carolina)). However, unlike the defendants in these cases, Defendant's products are not intended to be sold to *individual* customers. Instead, Defendant sells its software to *business* customers, which in turn distribute the software under sub-licenses to other *businesses* as they deem appropriate. Docket No. 61 (Declaration of Joel Fields at ¶¶ 29-34).

Second, even assuming the stream of commerce theory applies to facts such as these, the Court concludes that there is no personal jurisdiction under that theory. Although the Federal Circuit has left unresolved the proper standard for analyzing the stream of commerce theory, this Court, like the Sixth Circuit in which it sits, has a "preference for Justice O'Connor's stream of commerce 'plus' approach, for the reasons set forth in that opinion." *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 480 (6th Cir. 2003). Under that standard, the Court finds that it does not have jurisdiction over Defendant because Defendant did not take actions "purposefully directed" toward Tennessee. But even under the lower standard that requires no "additional conduct," the Court finds that Defendant's "conduct and connections" with Tennessee were not "such that they should reasonably have anticipated being brought into court" here. *Beverly Hills Fan*, 21 F.3d at 1566. Neither the sales of Defendant's software nor the acts that allegedly resulted in modifications to the design and marketing of that software constitute "deliberate" or "significant" contact with Tennessee to allow this Court to exercise jurisdiction.

11

This case is analogous to *AFTG-TG*, in which the Federal Circuit found the plaintiff had failed to establish personal jurisdiction under the *Beverly Hills Fan* line of stream of commerce cases because the defendant had made only isolated shipments to the forum state at the request of third parties, the cause of action for patent infringement did not arise out of the isolated shipments to the forum state, plaintiff had failed to submit declarations identifying sales in the forum state that would refute the defendant's assertions that their contacts with the forum state were sporadic at best, and plaintiff had proffered no evidence indicating that the forum state "was part of any defendant's continuous, established distribution channels, which was a significant factor supporting the exercise of personal jurisdiction in *Beverly Hills Fan*." *AFTG-TG*, 689 F.3d at 1365. Defendant's contacts in this case are even more attenuated than those in *AFTG-TG* because it does not itself ship its software to stores or dealers in Tennessee.

This case is also very similar to *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998), in which the Federal Circuit found there was no personal jurisdiction because the defendant itself did not do business within the forum state, but rather had business partners that did business there:

> [Defendant's] licensees have extensive contacts with Minnesota, but this additional factor is also insufficient to submit [Defendant] to personal jurisdiction in the state. In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota. Indeed, as stated above, the Supreme Court has made clear that contacts resulting from "the unilateral activity of another party or third person" are not attributable to a defendant. *See Burger King*, 471 U.S. at 475 & n. 17 (citing *World–Wide Volkswagen*, 444 U.S. 286 (no jurisdiction over an out-of-state automobile distributor whose only tie to the forum resulted from a customer's decision to drive there); *Kulko v. California Superior Court*, 436 U.S. 84 (1978) (no jurisdiction over a divorced husband being sued for child-support payments whose only affiliation with the forum was created by his former spouse's decision to settle there); and *Hanson v. Denckla*, 357 U.S. 235 (1958) (no jurisdiction over a trustee whose only connection with the forum resulted from the settlor's decision to exercise her power of appointment there)). [Plaintiff's] flawed

> theory would subject a defendant to nationwide personal jurisdiction if it decides to do business with a company that does business nationwide.

*Id.* at 1361. Similarly, the Court does not have personal jurisdiction over Defendant simply based on its sale of software to companies that conduct business in Tennessee. Again, the other facts alleged by Plaintiff, such as those that give rise to its state-law claims, also fail to constitute sufficient contacts with the state of Tennessee for Defendant to be subject to this Court's jurisdiction. Accordingly, assuming the stream of commerce theory applies to the facts of this case, and under either stream of commerce standard, the Court finds that it lacks in personam jurisdiction over Defendant.

**IV. Conclusion**

For the foregoing reasons, the Court will GRANT Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction.

An appropriate order is filed herewith.

*/s/ Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE